**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| PATRICIA GREEN, )<br>      Plaintiff, )<br>v. )<br>)<br>MICHAEL ASTRUE, COMMISSIONER )<br>OF SOCIAL SECURITY, )<br>      Defendant. ) | No. 3:11-CV-1705-L(BF) |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This is an appeal from the decision of the Commissioner of the Social Security Administration ("the Commissioner" or "Defendant") denying the claim of Patricia Green ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). The Court considered Plaintiff's Brief, Defendant's Response, and Plaintiff's Reply Brief. The Court reviewed the record in connection with the pleadings. The final decision of the Commissioner should be reversed and remanded for further consideration.

**Background**[1]

**Procedural History**

Plaintiff protectively filed applications for DIB and SSI on March 6, 2008. (Tr. at 15.) Plaintiff alleged disability beginning March 1, 2007, in both applications. (Tr. at 17.) Her claims were denied initially on April 15, 2008, and upon reconsideration on July 11, 2008. (Tr. at 15.) Plaintiff then requested a hearing before an ALJ. (*Id.*) ALJ Walter Orr held a hearing on March 11,

---

[1] The following background facts are taken from the transcript of the administrative proceedings, which is designated as "Tr."

2009, in Dallas, Texas. (Tr. at 23.) Plaintiff was represented by attorney Catherine Coats. (*Id*.) Also present and testifying was Suzette Skinner, a vocational expert (VE). (*Id*.)

On September 4, 2009, the ALJ issued an unfavorable decision. (Tr. at 12.) The same day, Plaintiff timely requested Appeals Council review of the ALJ's decision. (Tr. at 1.) The Appeals Council denied Plaintiff's request for review on May 24, 2011. (*Id*.) Plaintiff exhausted her administrative remedies and timely seeks judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g).

## Plaintiff's Age, Education, and Work Experience

On Plaintiff's onset date and at all relevant times during the proceedings, Plaintiff was 51 years old, an individual closely approaching advanced age under 20 C.F.R. § 404.1564 and 416.964. (Tr. at 19.) Plaintiff was 5'4" and weighed between 185 and 197 pounds at various times during her medical treatment. (Tr. at 24, 198, 227, 237, 239.) She has a limited education and past relevant employment as a warehouse worker (medium, unskilled, SVP of 2), cleaner (heavy, unskilled, SVP of 2) and day worker (medium, unskilled, SVP of 2). (Tr. at 24, 32.)

## Relevant Medical Evidence[2]

Prior to her alleged date of disability onset, Plaintiff had bilateral breast cancer for which she underwent a double mastectomy and chemotherapy. (Tr. at 200.) Plaintiff continues to suffer from the residuals of her cancer, which is now in remission, as well as from other medically determinable physical and mental impairments. Medical records around and after Plaintiff's date of onset show that she suffers from depression (Tr. at 200, 203, 227, 238, 260), anxiety (Tr. at 227, 237, 267), back and chest muscle spasms (Tr. at 198, 202, 227, 232, 267), upper extremity pain and weakness (Tr.

---

[2] (Pl.'s Br. at 4-7.)

at 202, 204, 227, 232, 256, 267), leg pain (Tr. at 198, 203, 227, 252), joint pain (Tr. at 199, 201, 242), obesity (Tr. at 201), bulging discs in her cervical and thoracic spine (Tr. at 230), spondylosis (Tr. at 231), and foraminal stenosis (Tr. at 231, 256).

Medical records documenting her impairments and symptoms begin in 2006, when she saw her treating doctor for pain in her upper right quadrant. (Tr. at 206.) The pain continued into May of 2007, when Plaintiff was diagnosed with continued pain at the surgical sites of her mastectomy and in her upper left extremity. (Tr. at 204.) In September of 2007, Plaintiff was seen for headaches, shooting pain in her right leg, continued muscle spasm, depression, anxiety and pain in her arm, shoulder, chest, and cervical spine. (Tr. at 227.) Her treating physician determined that her pain was "chronic." (Tr. at 229, 231, 232.) An MRI report showed multilevel spondylosis in Plaintiff's cervical and thoracic spine, spinal stenosis, and multiple disc bulges. (Tr. at 230-31.)

In October of 2007, Plaintiff was again seen for upper back spasms, lower and upper back pain, and numbness in her right thigh. (Tr. at 233, 252.) Plaintiff reported that her pain was exacerbated by walking, sitting, and getting up from a seated position. (Tr. at 252.) She also reported that physical therapy prescribed for her spasms and pain had only made her condition worse. (*Id*.) Plaintiff was assessed with chronic upper back pain which was both myofascial trigger point related and secondary to her double mastectomy and the radiation her chest was exposed to during cancer treatment. (Tr. at 253.) Plaintiff's pain was again described as "chronic." (*Id*.)

Plaintiff continued treatment for back pain and spasms near the sites of her mastectomy in November of 2007. (Tr. at 198, 202, 203.) Plaintiff also experienced numbness, tingling, weakness, joint pain, and right leg pain. (Tr. at 198-99.) Plaintiff's treating physician at Texas Oncology, Dr. Gerardo H. Trillo, M.D., also noted that Plaintiff was "very depressed." (Tr. at 202-03.) At that

3

time, her treating doctor felt that Plaintiff's symptoms could be related to depression or fibromyalgia rheumatica. (*Id*.) However, the doctor did want to rule out a return of Plaintiff's metastic disease and ordered further testing. (*Id*.) The doctor also prescribed physical therapy and Zanaflex, a muscle relaxer. (Tr. at 251.)

Plaintiff attended physical therapy where the therapist attempted "myofascial work," but Plaintiff could not tolerate it. (*Id*.) The Zanaflex also failed to provide relief. (*Id*.) As a result of the failed therapies, Plaintiff's doctor administered three trigger point injections. (*Id*.)

In December of 2007, Plaintiff was seen for follow-up on the trigger point injections. (Tr. at 255.) The injections temporarily eased Plaintiff's pain, but the pain returned. (*Id*.) Plaintiff's cervical range of motion was also restricted. (*Id*.) Plaintiff was given more trigger point injections. (*Id*.) Plaintiff also underwent a bone scan which revealed degenerative changes in her lumbar spine. (Tr. at 217.)

In January of 2008, Plaintiff underwent a CT scan of her pelvis, abdomen, and chest which did not show any metastases. (Tr. at 201.) Plaintiff's chemistries were also within normal ranges. (*Id*.) Based on those findings, which ruled out a return of Plaintiff's cancer, her doctor felt that the symptoms she experienced were caused by degenerative joint disease and depression secondary to Plaintiff's obesity. (Tr. at 201.) Plaintiff also continued to experience symptoms from her mental impairments. (*Id*.) In February of 2008, Plaintiff was seen by her treating physician, Dr. Anu Bhargava, at Stonebriar Family Physicians, P.A. (Tr. 237.) Plaintiff suffered from increased anxiety, sleep disturbance, and decreased appetite. (*Id*.) Plaintiff also experienced decreased energy and concentration along with psychomotor retardation. (*Id*.) Plaintiff was assessed with dysthymia and prescribed a sleep aid and an antidepressant. (Tr. at 238.) In April of 2008, Dr. Boyd Jenkins,

4

who was identified only as an MD, filled out part of a form which indicated that he was treating Plaintiff for a mental condition, and on which he checked a box indicating that the mental condition imposed no more than minimal limitations. (Tr. at 241.) The record contains no underlying treatment records from Dr. Jenkins, and no explanation of his checkmarks.

A non-examining, non-treating state agency medical consultant issued a physical residual functional capacity ("RFC") opinion in April of 2008. (Tr. at 242-49.) The consultant's opinion was based on the primary diagnosis of cervical spondylosis and the secondary diagnoses of degenerative joint disease and history of breast cancer. (Tr. at 242.) The consultant stated that Plaintiff's impairments limited her lifting and carrying to twenty pounds occasionally and ten pounds frequently. (Tr. at 243.) The consultant further noted that Plaintiff had no postural, manipulative, or environmental limitations. (Tr. at 242-49.)

Later the same month, Plaintiff was seen by her treating physician to follow up on her neck and back pain. (Tr. at 256.) On examination, the doctor noted weakness and paresthesia in Plaintiff's upper left extremity. (*Id*.) Plaintiff's Tinel's sign was also positive on the left side, indicating a nerve impairment. (*Id*.) The doctor assessed Plaintiff with cervical disc disease with foraminal stenosis and possible radicular syndrome. (*Id*.) He noted that Plaintiff experienced no improvement after trigger point injections. (*Id*.) The doctor also prescribed a nerve root block. (*Id*.)

In May of 2008, Plaintiff's treating physician, Dr. Bhargava again saw Plaintiff for her mental condition. (Tr. at 267.) Plaintiff continued to experience symptoms of anxiety and depression, including a fear of open spaces, anger outbursts, low energy, impaired concentration, and an inability to complete tasks. (*Id*.) Dr. Bhargava prescribed Zoloft for the anxiety and depression. (Tr. at 268.) Plaintiff also suffered from muscle spasms in her chest and was unable to

5

lift her left arm. (Tr. at 267.) In August of 2008, Plaintiff's treating physician at Texas Oncology diagnosed Plaintiff as "chronically depressed." (Tr. at 260.)

## Plaintiff's Testimony at the Administrative Hearing

Plaintiff reported symptoms and limitations related to her mental impairments in her testimony at the administrative hearing. Plaintiff reported that depression limits what she can do. (Tr. at 159.) She gets upset easily, is nauseated by stress, and cries when criticized. (Tr. at 161-63.) With respect to physical limitations, Plaintiff testified that she can sit for fifteen minutes before pain causes her to change positions and move around. (Tr. at 26.) Plaintiff can stand for thirty minutes before needing to sit or change positions. (Tr. at 27.) Plaintiff also reported weakness and spasms in her hands and arms. (Tr. at 27-28.)

## Standard of Review

To be entitled to social security benefits, a plaintiff must prove that she is disabled for purposes of the Social Security Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

      2.      An individual who does not have a "severe impairment" will not be found to be disabled.

      3.      An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

      4.      If an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" must be made.

      5.      If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove her disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

      The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C.A. § 405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not reweigh the evidence, retry the issues, or substitute

its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. However, "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). Moreover, the terms of 20 C.F.R. § 404.1527 define "medical opinions" and instruct claimants how the Commissioner will consider the opinions.[3] In the Fifth Circuit, "the opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton*, 209 F.3d 448, 455 (5th Cir. 2000); *see Floyd v. Bowen,* 833 F.2d 529, 531 (5th Cir.1987).

## The ALJ's Decision

The ALJ followed the five-step sequential disability analysis found in 20 C.F.R. §§ 404.1520(a), 416.920(a) in his decision. (Tr. at 15-20.) First, the ALJ found that Green is insured for purposes of DIB eligibility until December 31, 2011. (Tr. at 17.) At step one, the ALJ found that Green had not engaged in substantial gainful activity since March 1, 2007, the date Green claims she became disabled. (*Id.*) At step two, the ALJ found that Green's multilevel cervical spondylosis and degenerative joint disease were medically determinable severe impairments which significantly limited Green's ability to work. (Tr. at 16, 17.) At step three, the ALJ found that

---

[3] The terms of 20 C.F.R. § 404.1527(a)(2) provide:

> (2) Evidence that you submit or that we obtain may contain medical opinions. Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

8

Green's impairments did not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1. (Tr. at 18.)

The ALJ next determined that Green had the RFC[4] to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b). (*Id*.) At step four, the ALJ found that, based on her RFC, Green was unable to perform her past relevant work, which was unskilled and ranged from light to heavy in exertion. (Tr. at 19.) However, at step five, the ALJ did not rely upon the testimony of the VE that he had solicited from the VE at the hearing. Instead, the ALJ found that Plaintiff had no severe non-exertional impairments and based his determination on the medical-Vocational Guidelines, 20 C.F.R., Part 404, Subpart P. Appendix 2. The ALJ determined that there were jobs in the national economy that Green could perform, based on her age, education, and RFC. (Tr. at 20*.*) Green was 51 years old at the time of her application for benefits, making her "an individual closely approaching advanced age" for purposes of eligibility for disability benefits. 20 C.F.R. §§ 404.1563, 416.963. Green also has a limited education and is able to communicate in English. 20 C.F.R. §§ 404.1564, 416.964. The ALJ found that the Medical-Vocational Guidelines directed a finding of no disability under the Act. (Tr. at 20.)

**Issues**

1. Did the ALJ commit legal error by failing to use the severity standard required by the Fifth Circuit Court of Appeals?

2. Did the ALJ fail to adequately address Plaintiff's mental impairments, thus prejudicing her case?

---

[4] Residual functional capacity reflects the capabilities of the claimant in a sustained work setting, despite her limitations  (20 C.F.R. §§ 404.1545, 416.945).

9

3. Was the ALJ's finding that Plaintiff did not have any nonexertional impairments supported by substantial evidence, and if not, was Plaintiff prejudiced?

**Analysis**

**Did the ALJ commit legal error by failing to use the severity standard required by the Fifth Circuit Court of Appeals?**

Plaintiff contends that at Step Two of the sequential evaluation process, the ALJ failed to apply the Fifth Circuit's severity standard set forth in *Stone v. Heckler*, 752 F.2d 1099, 1104-05 (5th Cir. 1985). (Pl.'s Br. at 8.) Plaintiff further contends that unless the ALJ applied the correct severity standard, the case must be remanded to the Commissioner for reconsideration based upon legal error. *Stone*, 752 F.2d at 1106. In this case, in setting forth the applicable law at the beginning of the decision, the ALJ cited and quoted the standard set forth in the regulation, but noted that the Fifth Circuit Court of Appeals "has expressed concern that an improper definition of non-severe impairments had been utilized in the past." (Tr. 16.) The ALJ stated that the Fifth Circuit "held that an impairment can be considered non-severe only if it is a slight abnormality that would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." (*Id.*)

At Step Two of the procedure, the ALJ stated: "the claimant has the following severe impairments: Multilevel Cervical Spondylosis and Degenerative Joint Disease (20 CFR 404.1520(c) and 416.920)." The Commissioner contends that simply because the ALJ set forth the regulatory standard does not mean that he applied that standard instead of the *Stone* standard. The Commissioner bases this argument on the ALJ's citation of *Stone*. However, the Commissioner must go beyond a citation of *Stone* because on review, the Court must look beyond the use of "magic

10

words" and determine whether the ALJ applied the correct severity standard. *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986).

The ALJ gave the following reasons for his failure to find Plaintiff's hypertension and depression to be severe impairments. (Tr. 17-18.) The ALJ stated: "Dr. Bhargava [Plaintiff's treating physician] reported on May 16, 2008, that the claimant had hypertension and depression. However, she was alert and oriented and had normal mood and affect. There were no auditory or visual hallucinations and her thought content was logical. She had no suicidal or homicidal ideation. She had a normal gait. Exhibit 7F/11." Further, "Dr. Boyd R. Jenkins reported on April 7, 2008, that he treated the claimant for a mental condition. However, he did not felt [sic] that the condition imposed more than minimal limitations. Exhibit 3F."

The Court finds that the ALJ applied the "more than minimal limitations" standard and thus created ambiguity. *Craaybeek v. Astrue*, 7:10-CV-054-BK, 2011 WL 539132, 6 (N.D.Tex. Feb. 7, 2011) ("express recitation of a standard inconsistent with the *Stone* standard creates an ambiguity and this ambiguity regarding whether the correct legal standard was used must be resolved at the administrative level"). Medical records around and after Plaintiff's date of onset show that she suffers from depression (Tr. at 200, 203, 227, 238, 260), anxiety (Tr. at 227, 237, 267), back and chest muscle spasms (Tr. at 198, 202, 227, 232, 267), upper extremity pain and weakness (Tr. at 202, 204, 227, 232, 256, 267), leg pain (Tr. at 198, 203, 227, 252), joint pain (Tr. at 199, 201, 242), obesity (Tr. at 201), bulging discs in her cervical and thoracic spine (Tr. at 230), spondylosis (Tr. at 231), and foraminal stenosis (Tr. at 231, 256).

In September of 2007, Plaintiff was seen for headaches, shooting pain in her right leg, continued muscle spasm, depression, anxiety, and pain in her arm, shoulder, chest, and cervical

spine. (Tr. at 227.) Plaintiff's treating physician at Texas Oncology, Dr. Gerardo H. Trillo, M.D., noted that Plaintiff was "very depressed." (Tr. at 202-03.) At that time, her treating doctor felt that Plaintiff's symptoms could be related to depression or fibromyalgia rheumatica. (*Id*.) In January of 2008, Plaintiff continued to experience symptoms from her mental impairments. (*Id*.) In February of 2008, Plaintiff was seen by her treating physician, Dr. Anu Bhargava, at Stonebriar Family Physicians, P.A. (Tr. 237.) Plaintiff suffered from increased anxiety, sleep disturbance, and decreased appetite. (*Id*.) Plaintiff also experienced decreased energy and concentration along with psychomotor retardation. (*Id.*) Plaintiff was assessed with dysthymia and prescribed a sleep aid and an antidepressant. (Tr. at 238.) In April of 2008, Dr. Boyd Jenkins, who was identified only as an MD, filled out a short form, indicating by a checkmark that he was treating Plaintiff for a mental condition, and by a second checkmark that the mental condition imposed no more than minimal limitations. (Tr. at 241.) The administrative record contains no underlying medical records or any other report or diagnosis which would support Dr. Boyd's claim that he was treating Plaintiff for a mental condition or from which the ALJ or this Court could determine Dr. Boyd's basis for checking the indication that Plaintiff's mental condition "imposed no more than minimal limitations."

There is no indication in the decision that the ALJ applied *Stone* at Step Two to determine Plaintiff's severe impairments. The ALJ's referral to applicable social security regulations and rulings, including 20 C.F.R. § 416.920(c), 20 C.F.R. § 416.921, SSR 85–28, SSR 96–3p, and SSR 96–4p, earlier in the opinion does not substitute as a proper construction of the *Stone* standard. *See, e.g. Brown v. Astrue*, No. 3:11-CV-0475-BD, 2012 WL 652034 at *3 (N.D.Tex. Feb. 29, 2012); *Lederman v. Astrue*, No. 3:10-CV-1987-M-BK, 2011 WL 5346268 at *7 (N.D.Tex. Nov. 3, 2011);

12

*Jones v. Astrue,* No. 3:11-CV-0107-BK, 2011 WL 4498872 at *7 (N.D.Tex. Sept.28, 2011); *Garcia v. Astrue,* No. 3:08-CV-1881-BD, 2010 WL 304241 at *3 (N.D.Tex. Jan. 26, 2010). The "no more than minimal limitations" definition that the ALJ applied in this case is not the standard set forth in *Stone*. In the Fifth Circuit, the appropriate legal standard for determining whether a claimant's impairment is severe is *de minimus*:

> [A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

*Stone,* 752 F.2d at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984) and citing *Davis v. Heckler*, 748 F.2d 293, 296 (5th Cir. 1984); *Martin v. Heckler*, 748 F.2d 1027, 1032 (5th Cir. 1984)). *See Loza* v. Apfel, 219 F.3d 378, 391 (5th Cir. 2000). Unlike the standard that the ALJ applied, *Stone* provides no allowance for minimal interference on a claimant's ability to work. Although this court has recognized that the difference between the two statements may appear to be slight, nowhere in the decision does the ALJ even imply that he applied the *Stone* standard nor an acceptable equivalent. The United States District Court for the Northern District of Texas is consistent in its refusal to find that the standard which the ALJ applied in this case is the standard set forth in *Stone*. *See Sanders v. Astrue*, No. 3:07-CV-1827-G (BH), 2008 WL 4211146 at *7 (N.D. Tex. Sept. 12, 2008); *Scroggins v. Astrue*, No. 3:08-CV-1444-L (BH), 2009 WL 192875, at *5 (N.D. Tex. Dec. 23, 2008), *rec. accepted*, 598 F. Supp. 2d 800, 806-07 (N.D.Tex. Jan. 27, 2009).

The Commissioner contends that even if the ALJ applied an incorrect severity standard, remand is not proper here because the ALJ proceeded beyond step two of the sequential evaluation process. In other words, the Commissioner would treat the error as a procedural error where remand

13

is not required unless a claimant demonstrates prejudice. In *Ruby v. Astrue*, a case which had proceeded to Step 5 of the process, the same ALJ applied the regulatory definition rather than the required Fifth Circuit *Stone* standard, and upon this Court's recommendation, the District Court reversed and remanded the case for further consideration at Step Two. *Ruby*, No. 3:08-CV-1012-B(BF), 2009 WL 4858060 (N.D. Tex. Dec. 14, 2009). As the Court points out in *Brown*, at *4, courts in this circuit have no discretion to determine whether such an error is harmless. *See Scroggins,* 598 F. Supp. 2d at 806–07. "Unless the correct standard is used, the claim *must* be remanded to the Secretary for reconsideration." *Stone,* 752 F.2d at 1106 (emphasis added); *see also Varela v. Astrue,* No. 4:11-CV-0232-Y, 2012 WL 473761 at * 5 n. 2 (N.D.Tex. Jan. 4, 2012), *rec. adopted*, 2012 WL 473918 (N.D.Tex. Feb.14, 2012) (collecting Northern District cases holding that failure to apply the *Stone* standard is legal error requiring reversal); *Adcock v. Astrue,* No. 3:10-CV-2257-BD, 2011 WL 5529555 at *4 (N.D.Tex. Nov.14, 2011) (remand required where the ALJ cited to *Stone,* but nonetheless applied incorrect standard); *Neal v. Comm'r of Soc. Sec. Admin.,* No. 3:09-CV-0522-N, 2009 WL 3856662 at *1 (N.D.Tex. Nov.16, 2009) (ambiguity as to whether proper legal standard was used in making severity determination must be resolved at the administrative level).

Plaintiff's impairments that the ALJ did not find severe were her muscle spasms and upper back pain caused by the mastectomy surgeries, her mental impairments, and her chronic pain. The difference between the *Stone* standard and that applied by the ALJ constitutes the ALJ's application of an incorrect legal standard and requires reversal and remand for legal, rather than procedural, error. *Sanders*, 2008 WL 4211146, at *7; *Scroggins*, 2009 WL 192875, at *5. *See Rangel v. Astrue*, 605 F. Supp. 840, 851 (W.D. Tex. 2009). Reversal is required so that the ALJ can apply the correct

standard in determining the severity of all of Plaintiff's impairments under *Stone* and consider them in combination with her other severe and non-severe impairments throughout the disability evaluation process.  *See* 20 C.F.R. § 404.1523.

Because remand is required pursuant to the ALJ's legal error at Step Two, the Court will not consider the remaining issues for review.  However, upon remand, the Commissioner should ensure that he properly considers such issues.

SO RECOMMENDED, June 6, 2012.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

15

## **INSTRUCTIONS FOR SERVICE AND**
## **NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).